UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

DONTIE S. MITCHELL,

                Plaintiff,

    -against-

JPAY; ANTHONY J. ANNUCCI, Acting Commissioner;
JEFF MCKOY, Deputy Commissioner; DONALD
VENETTOZZI, SHU Director; CHRISTOPHER MILLER,
Superintendent; TERESA TYNON, Superintendent;
PATRICK D. REARDON, Superintendent; MULCAHY,
Deputy Superintendent; WALKER, Deputy
Superintendent; DEBEJIAN, Deputy Superintendent;
JANE JOE, Commissioner's Hearing Officer; JOHN
DOE #1, Senior Offender Rehabilitation Coordinator;
B. MCCLOSKEY, Food Service Administrator; D.
PAUSELIOUS, Corrections Sergeant; CUCCHI,
Corrections Officer; JOHN DOE #2, Corrections Officer;
JOHN DOE #3, Corrections Officer; JOHN DOE #4,
Corrections Employee; JOHN DOE #5, Corrections
Employee,

                Defendants.

**AMENDED COMPLAINT**

Case # 9:20-CV-1407
Hon. Thomas A. McAvoy



U.S. DISTRICT COURT - N.D. OF N.Y.
**F I L E D**

SEP 1 3 2021

AT_____ O'CLOCK_____
John M. Domurad, Clerk - Syracuse

Plaintiff, DONTIE S. MITCHELL, states as follows:

## INTRODUCTION

1.     This is a civil rights action brought pursuant to 42 U.S.C. § 1983 seeking

deprivation, under color of state law, of rights secured by the Constitution of the United States.

## JURISDICTION AND VENUE

2.     This Court has jurisdiction under 28 U.S.C. § § 1331 and 1343 (a) (3) and (4).

3.     Plaintiff's claims for injunctive relief are authorized by 28 U.S.C. §§ 2283 and

2284 and Federal Rule of Civil Procedure 65.

4.      The Northern District of New York is an appropriate venue under 28 U.S.C. § 1391 (b) (2) because the events giving rise to this action occurred therein.

## JURY DEMAND

5.      Plaintiff demands a trial by jury.

## PARTIES

6.      Plaintiff Dontie S. Mitchell is a formerly incarcerated individual who was granted clemency by former New York State Governor Andrew M. Cuomo, and is currently residing at 12 Tyler Street in Troy, New York.

7.      Defendant JPay LLC ("JPay") is a private entity headquarters at 10981 Marks Way, Miramar, FL 33025, and is being sued in its individual capacity and official capacity as a state actor.

8.      Defendant Anthony J. Annucci is the Acting Commissioner of DOCCS and is being sued in his official capacity.

9.      Defendant Jeff McKoy is the Deputy Commissioner of DOCCS and is being sued in his individual and official capacities.

10.     Defendant Donald Venettozzi is the SHU Director of DOCCS and is being sued in his individual and official capacities.

11.     Defendant Christopher Miller at all relevant times herein was the superintendent of Great Meadow Correctional Facility ("Great Meadow") and is being sued in his individual and official capacities.

12.     Defendant Teresa Tynon was at all relevant times herein the Superintendent of Washington Correctional Facility ("Washington") and is being sued in her individual and official capacities.

13.     Defendant Patrick D. Reardon was at all relevant times herein the Superintendent of Marcy Correctional Facility ("Marcy") and is being sued in his individual and official capacities.

14.     Defendant Mulcahy was at all relevant times the Deputy Superintendent of Security at Washington and is being sued in his individual and official capacities.

15.     Defendant Walker was at all relevant times the Deputy Superintendent of Programs at Washington and is being sued in her individual and official capacities.

16.     Defendant Debejian was at all relevant times the Deputy Superintendent of Programs at Marcy and is being sued in his individual and official capacities.

17.     Defendant Jane Doe was at all relevant times the Commissioner's Hearing Officer at Great Meadow and is being sued in her individual and official capacities.

18.     Defendant John Doe #1 was at all relevant times a Senior Rehabilitation Coordinator at Marcy and is being sued in his individual and official capacities.

19.     Defendant B. McCloskey was at all relevant times the Food Service Administrator at Fishkill and is being sued in his individual and official capacities.

20.     Defendant D. Pauselius was at all relevant times a Corrections Sergeant at Fishkill and is being sued in his individual and official capacities.

21.     Defendant Cucchi was at all relevant times a Corrections Officer at Great Meadow and is being sued in his individual and official capacities.

22.     Defendant John Doe #2 was at all relevant times a Corrections Officer at Marcy and is being sued in his individual and official capacities.

23.     Defendant John Doe #3 was at all relevant times a corrections Officer at Marcy and is being sued in his individual and official capacities.

24.     Defendant John Doe #4 was at all relevant times a Corrections Official at Washington and is being sued in his individual and official capacities.

25.     Defendant John Doe #5 was at all relevant times a Corrections Official working at DOCCS Central Office and is being sued in his individual and official capacities

## GENERAL FACTS

**i.     UFD**

26.     UFD stands for Ujamaa Fraternal Dynasty and is a mutual self-improvement fraternity.

27.     Plaintiff is the leader and founder of UFD, which Plaintiff uses in prison to positively organize, motivate, inspire, educate, and mentor young prisoners and to steer them away from gangs, drugs, and violence.

28.     UFD is defined as a fraternal beneficiary association under Title 26 U.S.C. § 501c (8).

29.     Members of UFD call one another "Ndugu," which is a Swahili word for brother(s), sister(s), relative(s), or comrade(s), because they are a family.

30.     Membership in UFD is fraternal, sacred, perpetual, almost religious, and a part of a member's personal identity.

31.     Membership in UFD is exclusive and selective in that one must be committed to personal change and betterment and to upholding the purpose, aims, beliefs, and principles of

UFD, otherwise membership is opened to anyone regardless of race, color, creed, gender, or sexual orientation.

32.    Members of UFD are espoused to Conscious Money, a philosophy developed by Plaintiff.

33.    Conscious Money blends the Fourth Principle of Kwanzaa, Ujamaa (Cooperative Economics), with the principles, teachings, and lessons of personal success as set forth in such books as *Your Magic Power to Be Rich*, by Napoleon Hill; *The Success Principles: How to Get from Where You Are to Where You Want to Be*, by Jack Canfield; *The One Minute Millionaire: the Enlightened Way to Wealth*, by Mark Victor Hansen and Robert G. Allen; *The 7 Habits of Highly Effective People*, by Stephen R. Covey; and *How to Win Friends and Influence People*, by Dale Carnegie.

34.    UFD is not a gang or security threat group.

35.    UFD does not promote, condone, advocate, nor encourage radicalization, rebellion, violence, obstruction, disobedience toward prison staff, sexism, racism, gender discrimination, or criminal activity.

36.    UFD as an organization has NEVER been involved in any disturbances, including, but not limited to, gang fights, riots, or demonstrations within DOCCS correctional facilities.

37.    There are approximately twenty five Ndugu and twenty nine prospects of UFD all in the custody of DOCCS, and there are approximately five Ndugu on parole / post-release supervision.

5

38.     DOCCS has designated UFD an "unauthorized organization" because Defendant McKoy refuses to recognize and approve prison chapters of UFD as inmate organizations pursuant to DOCCS Directive #4760.

39.     Because of this, Prison Rule 105.14 - Unauthorized Organizations prohibits incarcerated members of UFD from possessing and distributing UFD literature and organizational materials, and from holding UFD meetings and study groups.

40.     DOCCS does not allow incarcerated members of UFD in different correctional facilities to communicate with one another.

41.     DOCCS does not allow members of UFD on parole / post-release supervision to communicate with each other or with incarcerated members of UFD.

42.     On September 9, 2021, Plaintiff was released from prison after former New York State Governor Andrew M. Cuomo granted him clemency, and Plaintiff is serving five (5) years on post-release supervision.

43.     Plaintiff wants to communicate with his incarcerated Ndugu and work with them to form prison chapters of UFD within DOCCS correctional facilities.

44.     Plaintiff wants to communicate with his Ndugu on parole / post-release supervision and work with them to promote and expand UFD outside of prison.

45.     Because DOCCS designates UFD an "unauthorized organization," Plaintiff will be prohibited from doing those activities described above in ¶¶ 45 and 46.

46.     Plaintiff filed a civil rights action under 42 U.S.C. § 1983 in this Court (*Mitchell v. Annucci, et al.*, Case # 9:19-CV-0718) challenging, among other things, Defendant McKoy's decision disapproving prison chapters of UFD.

47.    In Case # 9:19-CV-0718, this Court denied Plaintiff's request to join the claims herein related to UFD.

ii.    **UFD Literature and Organizational Materials**

48.    DOCCS bans UFD literature and organizational materials state-wide.

49.    Ostensibly, DOCCS' policy is for written materials related to an unauthorized organization to be sent through media review and disapproved *before* possession of such will result in a misbehavior report.

50.    In 2020, Plaintiff was twice issued a misbehavior report for possessing UFD literature and organizational materials and placed in solitary confinement as a result.

51.    The written UFD literature and organizational materials confiscated from Plaintiff in neither case was sent through media review.

52.    UFD literature and organizational materials have never been disapproved by media review.

53.    Aside from the fact it can facilitate organizational activity within a correctional facility, and DOCCS designates UFD an unauthorized organization, UFD literature and organizational materials do not violate DOCCS' media review standards as set forth in Directive #4572.

54.    UFD literature and organizational materials encourages positive and constructive organizational activity among prisoners.

iii.    **JPay and DOCCS Tablet Program**

55.    DOCCS has contracted with JPay to provide incarcerated individuals in DOCCS custody with email, videogram, and other such services via a tablet assigned to each incarcerated individual.

56.    JPay allows, and facilitates the ability of, DOCCS officials to censor and reject incoming messages, photos, and videograms sent to prisoners without providing adequate notice to the prisoner and to the sender.

57.    JPay allows, and facilitates the ability of, DOCCS officials to censor and reject outgoing messages sent by prisoners without providing adequate notice to the prisoners.

58.    JPay screens, flags, and blocks incoming and outgoing messages to / from prisoners on behalf of DOCCS.

59.    JPay, on its own, censors and rejects messages, photos, and videograms to / from prisoners without notice in a predatory practice to maximize its profits when its customers pay to resend the same messages, photos, and videograms which are then let through.

60.    DOCCS has no particularized standards by which JPay messages, photos, and videograms are censored and rejected by corrections employees, so those employees apply their own personal opinions and prejudices when doing so.

61.    JPay and DOCCS have intentionally made it unnecessarily difficult and cumbersome for prisoners and their JPay contacts to challenge the censorship and rejection of their messages, photos, and videograms.

62.    JPay and DOCCS will not allow Plaintiff to distribute UFD literature and organizational materials via JPay tablets and JPay's network.

**iii.    Solitary Confinement**

63.    SHU (Special Housing Unit) is the term given to solitary confinement in New York State prisons.

64.    Solitary confinement is a drastic level of confinement that causes deterioration of the mental and physical condition of the prisoners subjected to it.

65.    After even relatively brief periods of time in solitary confinement, prisoners have exhibited symptoms such as hypersensitivity to stimuli, perceptual distortions and hallucinations, increased anxiety, lack of impulse control, severe and chronic depression, appetite and weight loss, heart palpitations, sleep problems, and depressed brain functioning.

66.    The restriction of solitary confinement is strikingly toxic to mental functioning, even causing confusional psychosis in some prisoners.

67.    A 2014 study of the New York State prison population found that prisoners in solitary confinement were approximately seven times more likely to harm themselves than prisoners in general population.

68.    The consequences of long-term solitary confinement are so well-known numerous medical associations, including the American Psychiatric Association, the American Public Health Association, the National Alliance on Mental Illness, the Society of Correctional Physicians, and Mental Health America, have all issued formal policy statements opposing the practice.

69.    The global community has also recognized the threat that solitary confinement poses to the health of prisoners and have taken decisive measures to curtail its use.

70.    In fact, in September of 2015, the United Nations General Assembly revised its Standard Minimum Rules for the Treatment of Prisoners to state "[s]olitary confinement shall be used only in exceptional cases as a last resort, for as short a time as possible and subject to independent review."

71.    The practice of solitary confinement has already been largely eliminated in Europe.

72.    In Germany, for example, solitary confinement is rarely imposed and generally does not exceed a few days – four weeks, in extreme cases.

73.    At one time, there were more prisoners in solitary confinement in the State of Maine than there were in the entire United Kingdom.

74.    In North Carolina, solitary confinement has virtually been eliminated in all cases.

75.    Indeed, North Carolina has imposed a 30 day limit on solitary confinement even for the most serious offenses: assaulting an officer and fighting with weapons.

76.    In late 2020, resulting from a joint agreement between then New York State Governor Andrew M. Cuomo, the New York State Senate Majority Leader, and the New York State Assembly Speaker, DOCCS enacted regulations prohibiting solitary confinement for acts of misbehavior that do not pose an unreasonable risk to prison safety, security, or health.

77.    Then in 2021, the New York State Legislature passed the HALT law, which limits the use of solitary confinement in New York State.

78.    Despite all of this, on February 21, 2020, and then on November 3, 2020, Plaintiff was placed in solitary confinement for possessing harmless, innocuous UFD literature and organizational materials.

79.    There existed *No* legitimate penological interest for DOCCS officials to place Plaintiff in solitary confinement for this reason.

## SPECIFIC FACTS

### i.    Great Meadow

80.    On February 20, 2021, Defendant Miller ordered that members of the Crisis Intervention Unit ("CIU") at Great Meadow frisk Plaintiff and his cell for UFD literature and organizational materials.

10

81. Defendant Miller was fully aware Plaintiff would be found in possession of UFD literature and organizational materials because he was being sued by Plaintiff in Case # 9:19-CV-0718.

82 In Case # 9:19-CV-0718, Plaintiff revealed he is the author of UFD literature and organizational materials and continues to use such to recruit new members into UFD.

83. Despite the fact Plaintiff's UFD literature and organizational materials did not pose a risk to safety and security, and the fact UFD is not a gang or security threat group, Defendant Miller ordered that Plaintiff be placed in solitary confinement in F-Block for possessing the literature and materials.

84. F-Block is the most isolated SHU out of the two at Great Meadow.

85. Defendant Miller ordered these actions against Plaintiff in a retaliatory conspiracy involving Defendant John Doe #5.

86. Defendant Miller did so specifically because he was required a few days earlier to answer interrogatories in Case # 9:19-CV-0718 directed at him by Plaintiff.

87. Defendant Miller was angry and annoyed at the fact Plaintiff is suing him and that he was required to answer Plaintiff's interrogatories, which he feels Plaintiff should have no right to ask him.

88. In fact, two days after Plaintiff received Defendant Miller's answers to his interrogatories related to Case # 9:19-CV-0718, Defendant Miller ordered for Plaintiff to be placed in solitary confinement over harmless written materials.

89. At the time, Great Meadow was plagued by gang violence and drugs, which were taking up all of the time and attention of the CIU.

90.    Plaintiff was told by a CIU officer that they were aware of UFD and were not worried about it but that the call was coming from above them to crack down on UFD and the Plaintiff.

91.    Defendant Cucchi, who is a member of the CIU at Great Meadow, wrote a misbehavior report against Plaintiff resulting from the UFD literature and organizational materials he found in Plaintiff's property.

92.    Defendant Cucchi charged Plaintiff with violating Prison Rule 105.13 – Gangs for Plaintiff exercising his clearly established First Amendment right to freedom of speech in writing a letter merely mentioning his former gang affiliation in a context that clearly was not promoting, encouraging, nor facilitating gang activity.

93.    Defendant Cucchi also charged Plaintiff with violating Prison Rule 105.14 – Unauthorized Organizations for Plaintiff exercising his clearly established First Amendment right to possess harmless UFD literature and organizational materials he had authored.

94.    Defendant Jane Doe conducted the Superintendent's Hearing on Cucchi's misbehavior report.

95.    Defendant Jane Doe refused to consider Plaintiff's defense that Cucchi's misbehavior report and the rule violations charged were being unconstitutionally applied and that there existed no legitimate penological interest for Defendant McKoy to disapprove prison chapters of UFD.

96.    So, Defendant Jane Doe also denied Plaintiff's requests to submit documentary evidence and to call witnesses which would prove his defenses

97.    Defendant Jane Doe found Plaintiff guilty of both charges.

98.    Despite Plaintiff pointing out to her how disproportional solitary confinement is as a penalty to his alleged misbehavior, Defendant Jane Doe imposed a penalty of sixty (60) days in solitary confinement.

99.    Plaintiff appealed Defendant Jane Doe's decision to Defendant Venettozzi, reiterating his constitutional arguments, including his argument against the excessive use of solitary confinement.

100.    Defendant Venettozzi disregarded Plaintiff's arguments and affirmed Defendant Jane Doe's decision.

101.    Plaintiff ended up serving sixty one (61) days in solitary confinement due to this.

**ii.    Washington**

102.    Beginning around July, August of 2020, Plaintiff began noticing that his outgoing JPay messages were not being received by those to whom he sent them.

103.    JPay was flagging Plaintiff's outgoing messages to his supporters who were helping with UFD and the Free Dontie Mitchell campaign.

104.    Defendant John Doe #4 arbitrarily and capriciously censored and rejected these flagged messages without sufficient notice or explanation, making an appeal near impossible.

105.    So, Plaintiff submitted a written grievance complaint regarding this arbitrary and capricious action.

106.    In retaliation, Defendant John Doe #4 began disproportionally censoring and rejecting Plaintiff's outgoing messages and his incoming messages, photos, and videograms.

107.    Plaintiff then wrote more grievance complaints and wrote letters of complaint to Defendant Mulcahy to no avail.

108.    Plaintiff also submitted a formal appeal to Defendants Tynon and Mulcahy.

109.    Defendant Walker responded to Plaintiff's appeal and denied it despite the clear constitutional violation.

110.    Defendant Mulcahy, in retaliation for Plaintiff exercising his clearly established First Amendment right to freedom of speech and to petition for redress of his grievances and in an attempt to intimidate Plaintiff into stopping his complaints, censured Plaintiff for informing Defendant Mulcahy he will take legal action to vindicate the violation of his rights.

111.    Defendant Mulcahy clearly was warning Plaintiff not to threaten legal action, although doing so is protected speech.

112.    The disproportionate, retaliatory, and arbitrary censorship and rejection of Plaintiff's messages, photos, and videograms without adequate or sufficient notice continued on with the full knowledge and blessing of Defendants Tynon, Mulcahy, and Walker.

113.    Plaintiff also made a request for approval to form a prison chapter of UFD at Washington.

114.    In retaliation for Plaintiff suing him in Case # 9:19-CV-0718, Defendant McKoy denied Plaintiff's request without legitimate penological reasons for doing so.

115.    Plaintiff had also made a request to Defendant Tynon to correspond with several of his incarcerated Ndugu and his Ndugu Ricardo Caldwell, particularly because they are witnesses in Case # 9:19-CV-0718 and have relevant evidence related to that case.

116.    Defendant Tynon denied Plaintiff's request in a deliberate effort to hinder his ability to prevail in Case # 9:19-CV-0718.

117.    As a result of Defendant Tynon's decision, Plaintiff was unable to depose his Ndugu in Case # 9:19-CV-0718 to prove UFD does not encourage rebellious behavior by its members nor condones violence or extremism.

14

118.   Further, in retaliation for Case # 9:19-CV-0718, Defendant John Doe #5 directed that Plaintiff's cube be frisked for UFD literature and organizational materials, which were found and confiscated.

119.   The only thing which saved Plaintiff that time from receiving a misbehavior report is the fact he had proof in the form of answers to his requests for admissions in Case # 9:19-CV-0718 that Defendant Cucchi had returned to him on April 1, 2020, the UFD literature and organizational materials that were being re-confiscated at Washington.

**iii.   Marcy**

120.   In October of 2020, Plaintiff's JPay messages were once again being disproportionately and arbitrarily censored and rejected without sufficient or adequate notice.

121.   Plaintiff submitted grievance complaints about this to no avail.

122.   While at Marcy, none of the grievance complaints Plaintiff submitted, including those acknowledged being received by Defendant Debejian, were ever responded to nor filed.

123.   Plaintiff's grievance complaints at Marcy were not responded to nor filed in retaliation against him for his continued and persistent administrative and legal challenges to DOCCS' policies and staff.

124.   Defendant Reardon and Debejian were aware Plaintiff's grievance complaints were not being responded to nor filed.

125.   Defendant Reardon and Debejian approved of this action.

126.   Plaintiff also appealed the censorship and rejection of his JPay messages at Marcy to Defendant Reardon.

127.   Defendant Debejian responded to Plaintiff's appeal, refusing to render a decision in retaliation for Case # 9:19-CV-0718.

128.    Once again, Defendant John Doe #5 directed that Plaintiff's cube be frisked for UFD literature and organizational materials.

129.    Defendant John Doe #2 frisked Plaintiff's cube on November 3, 2020, confiscating UFD literature and organizational materials.

130.    Defendant John Doe #2 wrote a misbehavior report charging Plaintiff with violating Prison 105.14 – Unauthorized Organization for exercising his clearly established First Amendment right to possess UFD literature and organizational materials.

131.    In November of 2020, Defendant John Doe #1 conducted the Superintendent's Hearing on Defendant John Doe #2's misbehavior report.

132.    Defendant John Doe #1 refused to consider Plaintiff's defense that the misbehavior report and the rule violation charged were being unconstitutionally applied to him.

133.    So, Defendant John Doe #1 denied Plaintiff's requests to present documentary evidence and call witness which would prove his defense.

134.    Defendant John Doe #1 was clearly biased.

135.    Defendant John Doe #2 never states in his misbehavior report that the UFD literature and organizational materials he confiscated from Plaintiff's cube was disapproved by media review, as it is supposed to be *before* possession of it results in a misbehavior report.

136.    Defendant John Doe #1 assumed Defendant John Doe #2 followed proper procedure and checked to see if the UFD literature and organizational materials confiscated from Plaintiff were disapproved by media review.

137.    Defendant John Doe #2 never checked and Defendant John Doe #1 refused to consider the possibility John Doe #2 did not.

138.    Media review never rendered a decision that UFD literature and organizational materials confiscated from Plaintiff were prohibited or unacceptable.

139.    Further, Defendant John Doe #1 found Plaintiff guilty and maliciously gave Plaintiff a penalty of five months in solitary confinement

140.    Plaintiff made Defendant John Doe #1 aware that DOCCS was implementing new policies prohibiting the use of solitary confinement for the rule violation with which Plaintiff was charged.

141.    And Defendant John Doe #1 knew possession of UFD literature and organizational materials was harmless and did not warrant placement in solitary confinement.

142.    Defendant John Doe #1 imposed a penalty of solitary confinement against Plaintiff in retaliation for Plaintiff's fierce defiance in exercising and vindicating his clearly established First and Fourteenth Amendment rights; namely, defending his right to possess UFD literature and materials and to propagate the purpose, aims, beliefs, principles, and customs of UFD.

143.    Plaintiff ended up serving ninety eight (98) days in solitary confinement, and suffering from severe anxiety attacks that made him feel as if he were going into cardiac arrest and would die.

144.    Defendant John Doe #3 was directed to pack Plaintiff's property on November 3, 2020, after Plaintiff was taken to solitary confinement.

145.    Defendant John Doe #3 maliciously discarded, lost, or destroyed Plaintiff's active legal documents, particularly those related to Case # 9:19-CV-0718 or those that mentioned UFD.

146.    Defendant John Doe #3 also maliciously discarded, lost, or destroyed any complaints he found that Plaintiff wrote against DOCCS staff along with several books and other property.

147.    Defendant John Doe #3 maliciously discarded, lost, or destroyed Plaintiff's property and legal papers in retaliation for Plaintiff being a "jailhouse lawyer" who dares challenges prison staff administratively and legally.

148.    While packing Plaintiff's property, Defendant John Doe #3 saw how active Plaintiff was in his administrative and legal challenges against DOCCS officials and employees and Defendant John Doe #3 got upset at this and decided to discard, lose, and destroy Plaintiff's legal documents and property.

**iv.    Fishkill**

149.    On July 22, 2021, Defendant D. Pauselius confiscated a paper picture/poster of the UFD logo from Plaintiff's cube.

150.    Defendant D. Pauselius informed Plaintiff that "Albany" told him to "write up" Plaintiff due to Plaintiff's JPay activity related to UFD and that was why he was confiscating the UFD logo.

151.    A few days later Plaintiff was served a misbehavior report written by Defendant D. Pauselius.

152.    Defendant D. Pauselius charged Plaintiff with violating Prison Rule 105.14 - Unauthorized Organization for sending out the Body 2 Soul Primer as a JPay message to Lizzy Wolozin.

153.    The Body 2 Soul Primer is a harmless compilation of the purpose, aims, beliefs, principles, customs, and rituals of UFD.

18

154.   Prison Rule 105.14 does not prohibit the possession of a harmless logo.

155.   Yet, Defendant D. Pauselius charged Plaintiff with violating Prison Rule 113.23 - Contraband for possessing the harmless paper picture/poster of the UFD logo.

156.   On August 2, 2021, Defendant B. McCloskey conducted the Superintendent's Hearing on Defendant D. Pauselius' misbehavior report.

157.   Despite Plaintiff's defense that the misbehavior report and the rule violations were being unconstitutionally applied to him, Defendant B. McCloskey still found Plaintiff guilty while acknowledging what Plaintiff is trying to do with UFD "... is a positive avenue for not only current [prisoners] but those young people on the outside."

158.   Defendant B. McCloskey then imposed a suspended penalty of seventy five (75) days in solitary confinement and loss of privileges, causing Plaintiff emotional anguish and anxiety at the real possibility he could be placed back in solitary confinement, which was actually prohibited by then for the rule violations with which Plaintiff was charged.

159.   On August 21, 2021, Defendant JPay erased / removed from Plaintiff's tablet without notice drafts of letters, literature, articles, school and legal work, and other writings he was working on to send to his JPay contacts.

160.   By doing this, Defendant JPay has impaired Plaintiff's freedom of speech and unlawfully seized his writings without due process, failing to give Plaintiff the option to save them elsewhere.

## CONSPIRACY ALLEGATIONS

161.   Each time herein Plaintiff was targeted due to his UFD related activities, which he has a First Amendment right to engage in, and was frisked for UFD literature and organizational materials, Plaintiff was consistently told it was coming from "Albany."

162.    "Albany" here refers to the DOCCS Central Office.

163.    Defendant John Doe #5 is a DOCCS Central Office staff member.

164.    Defendant John Doe #5, in concert with the defendants, has directed a conspiracy to retaliate against Plaintiff for exercising his clearly established First Amendment rights to promote, operate, and organize UFD; to propagate the purpose, aims, beliefs, principles, customs, and rituals of UFD; and to sue DOCCS officials and staff who violate his rights.

165.    Defendant John Doe #5 became annoyed with the numerous letters of complaint Plaintiff kept sending to the DOCCS Central Office and with the lawsuits Plaintiff has filed against DOCCS officials and employees, and so Defendant John Doe #5 decided to target Plaintiff for retaliation by directing the staff at the various correctional facilities to which Plaintiff would be transferred to discipline Plaintiff for his UFD related activities which Defendant John Doe #5 knew Plaintiff could not give up doing.

## FIRST CAUSE OF ACTION

166.    Plaintiff repeats, reiterates, and re-alleges here each and every allegation set forth in ¶¶ 1-165 of this Amended Complaint.

167.    The Defendants have intentionally, or through deliberate indifference, become actors, perpetuators, orchestrators, or accessories in a conspiracy to deprive Plaintiff of, and to retaliate against him for exercising, his First Amendment rights guaranteed under the United States Constitution as described herein.

## SECOND CAUSE OF ACTION

168.    Defendants JPay and Annucci have intentionally, or through deliberate indifference, allowed DOCCS employees to arbitrarily and capriciously censor and reject

Plaintiff's JPay messages, photos, and videograms without proper, sufficient, and adequate notice in violation of the First and Fourteenth Amendments of the United State Constitution.

### THIRD CAUSE OF ACTION

169.    Defendants' actions, individually and collectively, as the case may be, in repeatedly disciplining Plaintiff for possessing harmless UFD literature and organizational materials, including a letter merely mentioning his former gang affiliation, do not serve any legitimate penological interest and therefore violates the Plaintiff's rights guaranteed under the First Amendment of the United States Constitution.

### FOURTH CAUSE OF ACTION

170.    Plaintiff's placement in solitary confinement for possessing harmless UFD literature and organizational materials did not serve any legitimate penological interest and was cruel and unusual punishment in violation of the First and Eighth Amendments of the United States Constitution.

### FIFTH CAUSE OF ACTION

171.    Defendant JPay's unilateral decision to erase or remove without notice or due process the drafts of letters, literature, articles, school and legal work, and other writings of the Plaintiff from his tablet violate the First, Fourth, and Fourteenth Amendments of the United States Constitution.

### RELIEF REQUESTED

WHEREFORE, Plaintiff respectfully requests that the Court grant the following relief:

1.    A declaration that the acts and omissions, described herein this Amended Complaint, violate the constitutional rights of the Plaintiff.

2.    An injunction ordering the Defendants and their officers, agents, employees, and successors provide proper, sufficient, and adequate notice to Plaintiff and his JPay contacts every time a JPay message, photo, or videogram is censored or rejected by DOCCS employees or by JPay.

3.    An injunction ordering the Defendants and their officers, agents, employees, and successors to craft more specific and particularized standards by which JPay messages, photos, and videograms are censored and rejected so as to minimize the input of the personal opinions and prejudices of DOCCS or JPay employees.

4.    An injunction ordering the Defendants and their officers, agents, employees, and successors to allow Plaintiff to communicate with his incarcerated and paroled Ndugu (fraternity brothers) and to use JPay to send them motivational messages, lessons, and UFD literature and organizational materials.

5.    An injunction ordering the Defendants and their officers, agents, employees, and successors to allow Plaintiff and his Ndugu Ricardo Caldwell to come into DOCCS correctional facilities to help incarcerated Ndugu to form prison chapters of UFD.

6.    An injunction ordering the Defendants and their officers, agents, employees, and successors to return to Plaintiff all of his confiscated UFD literature and organizational materials.

7.    An award of compensatory and punitive damages against the Defendants severely and jointly to Plaintiff for the censored and rejected JPay messages for which he paid; for the time he spent in solitary confinement for possessing harmless UFD literature and organizational materials; for mental and emotional anguish from the time Plaintiff spent in solitary confinement

22

and from being threatened with further placement in solitary confinement; and for the loss and destruction of his property, especially his legal work and his confiscated UFD literature and organizational materials.

     7.     Any additional relief this Court deems just, proper, and equitable.

Dated: September 9, 2021

                           Respectfully submitted,

                           Dontie S. Mitchell, Pro Se
                           12 Tyler Street, 1st Flr.
                           Troy, NY 12180
                           518-428-4275
                           mfalmesikivu@gmail.com

**VERIFICATION**

I, DONTIE S. MITCHELL, have read the foregoing complaint and know the contents thereof, and declare under penalty of perjury pursuant to 28 U.S.C. §1746 that the same is true and correct to the best of my knowledge and belief.

Executed On: _9/9/2021_

———————————————

Dontie S. Mitchell, Pro Se